BARBARA BROWN,

                Plaintiff,

v.                                                     3:16-CV-0941

COMMISSIONER OF SOCIAL SECURITY,     (WBC)

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LACHMAN, GORTON LAW FIRM<br>  Counsel for Plaintiff<br>P.O. Box 89<br>1500 East Main St.<br>Endicott, NY 13761 | PETER A. GORTON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | KRISTINA D. COHN, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 13, 15.).

      Currently before the Court, in this Social Security action filed by Barbara Brown ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings and Plaintiff's reply brief. (Dkt. Nos. 9, 10, 11.) For the reasons set forth below, Plaintiff's motion be granted, to the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and Defendant's motion is denied.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born in 1970. (T. 262.) She completed college. (T. 268.) Generally, Plaintiff's alleged disability consists of fibromyalgia, depression, anxiety, post-traumatic stress disorder ("PTSD"), asthma, back pain, neck pain, traumatic brain injury, post-concussion disorder, degenerative disc disease, gastroesophageal reflux disease ("GERD"), and swelling. (T. 267.) Her alleged disability onset date is December 13, 2012. (T. 241.)[1] Her date last insured is December 31, 2016. (T. 263.) She previously worked as a data entry clerk, lab technician/cook, licensed practical nurse ("LPN"), and medical assistant. (T. 34-36, 269.)

   B.   **Procedural History**

On January 22, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 262.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 24, 2014, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke. (T. 31-52.) ALJ Koennecke held a supplemental hearing on February 4, 2015. (T. 53-61.)

---

[1] Plaintiff previously filed applications for benefits and on December 12, 2012 ALJ Koennecke issued an unfavorable decision. (T. 86-107.) Plaintiff did not appeal the December 12, 2012 decision; therefore, the decision of the Commissioner finding Plaintiff not disabled during that time period was binding. *See* 20 C.F.R. §§ 404.987, 416.1487. Plaintiff did not request that her previous application be reopened, nor did ALJ Koennecke constructively reopen her previous application. Therefore, in the case here, Plaintiff's alleged onset date was amended to December 13, 2012, the day after the final determination of the Commissioner.

2

On February 10, 2015, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-28.) On July 14, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-22.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016 and Plaintiff had not engaged in substantial gainful activity since December 13, 2012. (T. 13.) Second, the ALJ found that Plaintiff had the severe impairments of obesity, fibromyalgia, and minimal degenerative joint disease of cervical and lumbar spine. (T. 13-16.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift any weight up to three hours per day, frequently lift and/or carry less than ten pounds, sit for six hours out of an eight hour workday, and stand and/or walk for two hours out of an eight hour workday. (*Id.*)[2] Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work as a data entry clerk. (T. 20.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

3

Plaintiff makes essentially four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in failing to find that Plaintiff's concussion syndrome was a severe condition and erred in failing to consider or find any limitations therefrom. (Dkt. No. 9 at 13-16 [Pl.'s Mem. of Law].) Second, Plaintiff argues that ALJ substituted her own medical opinion for that of Plaintiff's treating sources in formulating her RFC determination. (*Id.* at 16-21.) Third, Plaintiff argues the AC failed to consider newly submitted evidence and the ALJ improperly weighed the medical evidence in the record at the time of the hearing. (*Id.* at 21-22.) Fourth, and lastly, Plaintiff argues she cannot perform her past relevant work and the step five determination is not supported by substantial evidence. (*Id.* at 22-24.)

### B. Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues the ALJ did not err in her step two determination. (Dkt. No. 10 at 5-10 [Def.'s Mem. of Law].) Second, Defendant argues in determining Plaintiff's RFC, the ALJ properly evaluated the medical evidence of record. (*Id.* at 10-17.) Third, Defendant argues the ALJ properly found that Plaintiff could perform her past work as a data entry clerk. (*Id.* at 17-19.) Fourth, Defendant argues the ALJ properly relied on the Medical-Vocational Guidelines and vocational expert ("VE") testimony at step five. (*Id.* at 19-20.)

### C. Plaintiff's Reply Brief

Plaintiff filed a reply brief in which she reinforces the arguments made in her initial brief. (Dkt. No. 11.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### D. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

For ease of analysis Plaintiff's arguments will be address out of order and in a consolidated manner.

### A. The Medical Opinion Evidence in the Record and RFC Determination

Plaintiff's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In formulating Plaintiff's RFC, the ALJ will consider "all of the relevant medical and other evidence" in the record. *Id.* at §§ 404.1545(a)(3); 416.945(a)(3).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received treatment for her fibromyalgia from rheumatologist, Thomas Oven, M.D., and family nurse practitioner ("FNP") Elizabeth Schlitz Hull with Regional Rheumatology. On August 13, 2014, Dr. Oven and Nurse Hull completed a "Questionnaire." (T. 676-677.) The providers indicated that they treated Plaintiff for her fibromyalgia and trochanteric bursitis. (T. 676.) They opined that Plaintiff would be "off

7

task" greater than 20%, but less than 33%, of a work day. (T. 676.) They further opined that Plaintiff would have "good days" and "bad days," and Plaintiff's "bad days" would cause her to be absent more than four days per month from work. (T. 676-677.)

Regarding functional limitations, the providers opined Plaintiff could sit for approximately four to six hours in an eight hour day and stand/walk for approximately one hour in an eight hour day. (T. 677.) They also opined that Plaintiff would need to alternate between sitting and standing; however, they failed to complete the form to indicate whether Plaintiff would need to alternate position every two minutes or every two hours. (*Id.*) They opined Plaintiff could lift "over 10 pounds" up to three hours per day. (*Id.*)

In formulating her RFC determination, the ALJ afforded the medical source opinion of Dr. Oven and Nurse Hall various weights. (T. 17.) The ALJ afforded "some weight" to the opinion that Plaintiff could lift over ten pounds up to three hours per day and sit for approximately four to six hours per day. (*Id.*) The ALJ afforded "limited weight" to the opinion that Plaintiff would be off task 20%-33% of the day, absent more than four days per month, and required a sit/stand option. (*Id.*) The ALJ reasoned that the providers' "infrequent treatment" did not support these limitations. (*Id.*) The ALJ also stated that Nurse Hull diagnosed Plaintiff's bursitis based on an examination of Plaintiff, but failed to identify any other abnormal clinical findings to establish a medical determinable impairment. (*Id.*) And lastly, the ALJ stated that Nurse Hall treated Plaintiff for lumbar radiculopathy, but objective testing showed no evidence of lumbar radiculopathy. (*Id.*)

Plaintiff received her primary care at Lourdes Center for Family Health from Darlene Denzien, D.O. and physician's assistant ("PA") Patricia Vincent. On November 19, 2014, Dr. Denzien completed a "Questionnaire." (T. 746-747.) Dr. Denzien indicated that she treated Plaintiff for her traumatic brain injury, low back pain, and chronic fibromyalgia. (T. 746.) Dr. Denzien opined that Plaintiff would be "off task" more than 33% of the day. (*Id.*) She further indicated that Plaintiff would have "good days" and "bad days," and her "bad days" would cause Plaintiff to be absent more than four days per month. (T. 746-747.) Regarding functional limitations, Dr. Denzien opined Plaintiff could sit for approximately four hours in an eight hour day; stand/walk for approximately one hour in an eight hour day; and should alternate between sitting and standing every fifteen minutes. (T. 747.) Dr. Denzien indicated that Plaintiff should not lift any weight at all. (*Id.*)

The ALJ afforded Dr. Denzien's opinion "limited weight." (T. 17.) The ALJ reasoned that the doctor's opinion was "not fully supported by her own treatment notes." (*Id.*) Specifically, the ALJ stated that Dr. Denzien's opinion was based on Plaintiff's traumatic brain injury, which the ALJ determined to be non-severe. (*Id.*) The ALJ also reasoned that Dr. Denzien's opinion was not supported by objective medical evidence in the record. (T. 18.)

Here, the ALJ failed to provide good reasons for affording "limited weight" to the treating sources' medical opinions; and further, even had the ALJ properly determined that the treating sources' medical statements were entitled to "limited weight," the ALJ's RFC determination was not supported by substantial evidence in the record.

9

Plaintiff relies primarily on the Second Circuit's decision in *Balsamo v. Chater*, 142 F.3d 75 (2d Cir. 1998) to support her argument that the ALJ erred in weighing the opinion evidence in the record. (Dkt. No. 9 at 16-24 [Pl.'s Mem. of Law].) Plaintiff argues that under *Balsamo*, the ALJ's failure to rely on "any medical opinion to dispute the treating physicians' conclusion that [plaintiff] could not perform sedentary work" merits remand. (*Id.* at 16, 22-24, citing *Balsamo*, 142 F.3d at 81, 82.). Defendant counters that the ALJ properly accorded limited weight to the treating source opinions. (Dkt. No. 10 at 12-13 [Def.'s Mem. of Law].)

In *Balsamo*, as in the case here, the ALJ did not give controlling weight to the opinions of the treating sources due to their "infrequency of treatment" and failure to provide medically acceptable clinical and laboratory diagnostic techniques. (T. 17); *see Balsamo*, 142 F.3d at 80. The Court in *Balsamo* went on to conclude that because the ALJ did not cite any medical opinion indicating the plaintiff could perform sedentary work the ALJ improperly substituted his own lay judgment against that of the treating source. *Balsamo*, 142 F.3d at 81.

To be sure, here the ALJ did not rely on a specific medical opinion, or opinions, in formulating her RFC determination; however, since *Balsamo*, the Second Circuit has held that it is not *per se* error for an ALJ to make an RFC determination absent a medical opinion. The Second Circuit has held that despite the lack of a specific medical opinion, the RFC determination may still be supported by substantial evidence in the record. Where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013) (summary order), a medical source statement or formal

medical opinion is not necessarily required, *see id.*; *cf Pellam v. Astrue*, 508 F. App'x. 87, 90 (2d Cir. 2013) (summary order) (upholding ALJ's RFC determination where he rejected physician's opinion but relied on physician's findings and treatment notes)." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017).

In *Monroe*, the ALJ rejected the medical source statement of plaintiff's treating provider and instead relied on the provider's notations which included descriptions of symptoms, medical assessments, and "other characteristics relevant to [plaintiff's] abilities to perform sustained gainful activity." *Monroe*, 676 F. App'x at 8. In *Tankisi*, the medical record included an assessment of plaintiff's limitations from a treating source and a medical source statement from a consultative examiner. *Tankisi*, 521 F. App'x, at 34. Therefore, it is not, as Plaintiff's argues, *per se* error for an ALJ to formulate an RFC determination absent a medical source statement.

Although an ALJ may make an RFC determination absent a medical source statement, the ALJ must still provide good reasons for discounting Plaintiff's treating source opinions and provide a clear analysis of specific medical evidence in the record which in turn supports her determination that Plaintiff can perform the functional demands of work on a sustained basis. Here, the ALJ failed to do either.

First, the ALJ erred in her assessment of the opinions of Plaintiff's treating sources. The ALJ discounted Dr. Oven's opinion, in large part, due to Plaintiff's "infrequent treatment." (T. 17.) To be sure, frequency of treatment is a factor to be considered in evaluating the opinion of a medical source. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, the ALJ's conclusion is belied by the record. Plaintiff began treatment with Dr. Oven's practice in August of 2010 and

11

consistently received treatment approximately every three months from August 2010 through August 2014. (T. 455-476, 652-660.) Plaintiff was examined by a provider with Dr. Oven's office 18 times in three years. There was no indication in the August 2014 treatment notation, the last in the record, that Plaintiff was being discharged from treatment. (T. 651-652.)

The ALJ also discounted the opinions of Dr. Oven and Dr. Denzien because the opinions were based on impairments which the ALJ deemed non-severe. (T. 17.) For example, the ALJ discredits Dr. Oven and Nurse Hull's opinion, in part, because Plaintiff's diagnosis of bursitis was not based on an "abnormal clinical finding" other than Nurse Hall's examination. (*Id.*) Indeed, the ALJ determined at step two that Plaintiff's bursitis was non-severe. (T. 13.) However, Dr. Oven and Nurse Hull indicated that their limitations were based on Plaintiff's fibromyalgia and trochanteric bursitis. (T. 676.) The ALJ also discounted Dr. Denzien's opinion, in part, because it was based on treatment for Plaintiff's brain injury, which the ALJ determined to be non-severe. (T. 17.) However, Dr. Denzien based her limitations on a variety of medical diagnosis, not just a brain injury. (T. 746.)

Although an ALJ may deem a medically determinable impairment non-severe; the ALJ must nonetheless take that impairment into consideration when formulating her RFC determination. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]' ... when we assess your [RFC]...."). Further, Plaintiff's treating sources provided limitations based on their treatment of Plaintiff's collective impairments and it was therefore error for the ALJ to

12

summarily discount the entirety of the opinions because she classified one particular impairment to be non-severe.

The ALJ also discredits the treating sources' opinions because Plaintiff's fibromyalgia symptoms were not supported by normal physical examinations. For example, the ALJ cited a medical examination in which Plaintiff "had a history of fibromyalgia, but rheumatology records . . . showed no marked swelling of any peripheral joints." (T. 18.) The ALJ also cited records generally describing Plaintiff's gait as normal and diagnostic imaging showing mild abnormalities. (T. 19.) The ALJ appears to conclude, based on her own interpretation of the evidence, Plaintiff's limitations could not be due to her fibromyalgia because of her normal physical examinations. However, this is a fundamental misunderstanding of fibromyalgia. "Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical examinations, e.g., full range of motion, no joint swelling, normal muscle strength and normal neurological reactions. Thus, lack of positive, objective clinical findings does not rule out the presence of fibromyalgia, but may, instead, serve to confirm its diagnosis." *Campbell v. Colvin*, No. 5:13-CV-0451, 2015 WL 73763, at *5 (citing *Preston v. Secretary of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir.1988)).

To be sure, rejecting a treating source's opinion regarding the functional limitations of a fibromyalgia plaintiff based only on a perceived lack of objective evidence, or requiring medical evidence beyond that needed for a diagnosis, can be legal error. However, the opinion of a treating physician on the nature or severity of a

13

plaintiff's impairments is binding only if it is supported by medical evidence and not contradicted by substantial evidence in the record. *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008); *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

Here, it appears from the ALJ's terse analysis of the record, that she improperly rejected the treating source opinions based on a perceived lack of objective evidence supporting Plaintiff's diagnosis and limitations due to her fibromyalgia. Indeed, although the ALJ determined at step two that Plaintiff's fibromyalgia was a severe impairment, in her step four analysis she makes only one reference to Plaintiff's fibromyalgia, stating she "had a history of fibromyalgia, but rheumatology record . . . showed no marked swelling of any peripheral joints." (T. 18, *referring to* T. 456.) However, notations from Dr. Oven's office indicated Plaintiff was receiving continuous treatment for her fibromyalgia and nowhere in the treatment notation cited by the ALJ did it indicate Plaintiff had a "history" of fibromyalgia. (T. 456-457.) Otherwise, the ALJ's discussion of Plaintiff's treating sources referred only Plaintiff's impairments of bursitis, lumbar radiculopathy, brain injury, and lumbar/cervical impairments. (T. 17.) Although the ALJ determined Plaintiff's fibromyalgia was a severe impairment at step two, she appears to improperly discount a current, or continuous, diagnosis of fibromyalgia based on a lack of swelling in her step four analysis. Therefore, the ALJ failed to account for Plaintiff's fibromyalgia in assessing the opinions of her treating sources.

Overall, the ALJ erred in her analysis of the treating source opinions because she improperly discounted the opinions based on "infrequent" treatment which was not supported by the record, because the opinions were based (in part) on impairments she

deemed non-severe, and because she failed to properly account for Plaintiff's fibromyalgia.

Second, the ALJ's RFC determination fails because it is not supported by substantial evidence in the record. The ALJ stated that the objective medical evidence in the record supported her RFC determination. (T. 18.) The ALJ proceeded to list evidence, mostly consisting of "normal" and "mild" findings, which the ALJ deemed, without further clarification, equated with the ability to perform sedentary work. The ALJ specifically cited to treatment notations, diagnostic imaging and testing, neurological records, physical therapy notations, and Plaintiff's apparent ability to care for her young grandchildren. (T. 18-19.)

As outlined herein, the Second Circuit held that there are some circumstances in which an ALJ may make an RFC determination without a specific medical opinion; however, the RFC assessment will be "sufficient only when the record is clear and contains some useful assessment of [plaintiff's] limitations from a medical source." *Morales v. Colvin*, No. 3:16-CV-0003, 2017 WL 462626, at *3 (D. Conn. Feb. 3, 2017). Here, the record alone did not contain sufficient information from which the ALJ could support her RFC determination. Further, the ALJ's analysis of the objective medical evidence which she asserts supported an RFC for sedentary work, was insufficient.

The ALJ's listing of medical examinations and medical test results, without more, fails to indicate how the evidence supported the ability to perform the exertional and non-exertional requirements of sedentary work. *See Wilson v. Comm'r of Soc. Sec.*, No. 1:16-CV-77, 2017 WL 1194229, at *4 (N.D.N.Y. Mar. 30, 2017) ("although the ALJ outlines the medical evidence in the record, it is unclear how the medical

evidence he discusses supports an ability to perform the functions required for performance of light work").

Moreover, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms "not fully credible." (T. 19.) However, the ALJ's discussion failed to include a determination of whether Plaintiff's medically determinable impairments could reasonably be expected to produce the pain or other symptoms alleged as required under 20 C.F.R. §§ 404.1529(a), 416.929(a). In discussing Plaintiff's assertions, the ALJ states that Plaintiff's "allegations are contradicted by the paucity of abnormal clinical findings associated with a severe psychological disorder, the mild abnormalities present in diagnostic images of her cervical and lumbar spine, the normal EMG/nerve conduction study of her lower extremities, and her broad range of daily living." (T. 19.) Overall, the ALJ appears to conclude that the medical evidence failed to establish medical impairments which could produce Plaintiff's alleged symptoms. Of note, the ALJ's discussion once again ignores Plaintiff's diagnosis, treatment, and limitations due to fibromyalgia. When a plaintiff alleges pain that exceeds the objectively verifiable evidence, the ALJ must consider several evaluative factors, including daily activities, medication, and causes of the pain, in order to determine the extent to which the pain affects the claimant's functional capabilities. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(iv); 416.929(c)(3)(i)-(iv).

Here, the ALJ solely relied on Plaintiff's custody of three young grandchildren in determining Plaintiff's testimony was not credible. (T. 19.) Plaintiff testified, as did others, that although she had custody of her grandchildren she could not care for them on her own and relied on substantial help from friends. (T. 319-320, 321-322.) The ALJ

16

summarily dismissed this testimony concluding that "[j]ust because [Plaintiff] requests the help or accepts it does not mean that it is required." (T. 18.) The ALJ's conclusion is at best speculative.

In light of the above, the ALJ's conclusion that Plaintiff could perform sedentary work was not supported by substantial evidence in the record. Remand is appropriate so that the ALJ may properly weigh the medical opinions of Plaintiff's treating sources and clarify her basis for her assessment of the evidence in formulating Plaintiff's RFC.

### B. Plaintiff's Remaining Arguments

As stated herein, Plaintiff argues that the ALJ erred in finding that her concussion/post-concussion impairment was non-severe. (Dkt. No. 9 at 13-16 [Pl.'s Mem. of Law].) Plaintiff further argues that the ALJ failed to assess the effects of Plaintiff's cognitive/psychiatric impairments on her ability to maintain a regular schedule, attendance, concentration, and work pace. (*Id.* at 19-21.) Lastly, Plaintiff argues the AC failed to consider the medical source statement completed by Christopher Yanusas, Ph.D. (*Id.* at 21-22.)

Plaintiff's remaining arguments focus primarily on her cognitive abilities. This Court need not specifically address Plaintiff's remaining arguments because this matter is already being remanded for a proper evaluation of Plaintiff's treating source opinions and RFC determination. Plaintiff submitted a medical source statement to the AC from Dr. Yanusus, who treated Plaintiff for her concussion/post-concussion syndrome. (T. 814-815.) On remand the ALJ will have before her Dr. Yanusus's statement and therefore the ALJ may review and give Dr. Yanusus's statement the weight she deems appropriate.

17

**ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

    **ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:     July 17, 2017

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge